UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES FAUCETT, individually and on behalf of all other similarly situated individuals,** | )<br>)<br>) |
| Plaintiff, | )  Case No.<br>) |
| v. | )  Hon.<br>) |
| **QUALFON DATA SERVICES GROUP, LLC** | )<br>) |
| Defendant. | )<br>)<br>) |

## COLLECTIVE AND CLASS ACTION COMPLAINT

1.  Employers must pay their customer service representatives for the pre-shift time they spend booting up their computers and launching software because it is "integral and indispensable" to their duties and is thus compensable under the FLSA. *Peterson v. NelNet Diversified Sols., LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) ("The preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email."); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 840 (9th Cir. 2022) ("Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their computers at the beginning of their shifts is integral and indispensable and therefore compensable under the FLSA.").

2. Here, Defendant, Qualfon Data Services Group, LLC ("Qualfon") required Plaintiff Priestley Faucett and its current and former customer service representatives ("CSRs") to spend up to 30 minutes booting up their computers and launching software each shift but did not pay them for that time. Defendant's failure to pay for this "boot up" time resulted in the non-payment of a substantial amount of wages to Plaintiff and other CSRs employed by Qualfon nationwide during the period of the claim.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq*.

4. This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has general and specific personal jurisdiction over Qualfon because the cause of action arose within this District as a result of Qualfon's conduct within this District and Division and because Qualfon has its principal place of business in Highland Park, Michigan.

6. Venue is proper in the Eastern District of Michigan because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

7. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

8. Defendant Qualfon is a New York limited liability company with its principal place of business at 13700 Oakland Avenue, Highland Park, Michigan. Qualfon can be served through its registered agent: **Cogency Global, Inc., 186 N. Main Street, 2nd Floor, Suite 1, Plymouth, Michigan 48170.**

9. Plaintiff Priestley Faucett was employed by Qualfon as an hourly, non-exempt CSR remotely from his home in Denham Springs, Louisiana from approximately November 12, 2021 until February 2023. Plaintiff Faucett signed a consent form to join this action. **Exhibit A**.

## FACTS

10. Qualfon operates customer engagement and contact centers that provide direct marketing, customer service and sales, tech support, and inside sales to their clients' customers. *See* QUALFON, *Customer Care*, https://qualfon.com/solutions/customer-care/ (last visited Jan. 08, 2024) (Qualfon "provide[s] inbound and outbound customer service, order taking and help desk/tech support through phone, chat, web, social and text.").

11. Throughout the period of the claim, Qualfon has employed hourly, non-exempt CSRs who work at its contact centers or remotely from their homes ("Putative Class Members").

3

12. Qualfon operates contact centers in, among other places, Harlington, Texas, San Antonio, Texas, and Highland Park, Michigan.

13. Plaintiff and the Putative Class Members' job duties consisted of answering inbound phone calls made by Qualfon's clients' customers, answering customer inquiries, troubleshooting issues on behalf of customers, and generally assisting customers.

14. During his employment, Plaintiff had a Qualfon.com email address, and reported to Qualfon employees including Michelle Thornburg, Angela Morgan, and Janice Austin.

15. Throughout the period of the claim, Qualfon enforced a uniform company-wide policy wherein it improperly required Plaintiff and the Putative Class Members to perform compensable work off-the-clock and without pay.

## UNPAID "BOOT-UP" TIME

16. Qualfon failed to pay Plaintiff and the Putative Class Members for all the hours that they worked because of Qualfon's corporate policy and practice of requiring them to clock-in after booting up their computers and launching software programs.

17. Qualfon required Plaintiff and the Putative Class Members to start and login to their computers, read company emails, open multiple different computer

4

programs, log into those programs, and ensure they are loaded properly and running correctly before they log into the phone system to take their first call.

18. Qualfon allowed Plaintiff and the Putative Class Members to clock into ADP, the timekeeping system, no more than 5 minutes before the start of their scheduled shift. However, not only was 5 minutes insufficient to complete the bootup process, simply accessing the timekeeping system required Plaintiff and the Putative Class Members to open, load, connect, and log-into several essential computer programs. For example, Plaintiff and the Putative Class Members had to turn on the computer, wait for it to bootup, log-into Windows, connect to Citrix Workspace and log into Qualfon's Virtual Private Network ("VPN") before they could accessing ADP, Qualfon's timekeeping system.

19. Regardless, Qualfon required Plaintiff and the Putative Class Members to be call-ready at the start of their shift, which entailed loading many programs.

20. Qualfon knows that it takes Plaintiff and the Putative Class Members up to 30 minutes, not just 5, to fully boot-up and knowingly fails to pay them for that additional time:

> **angela.morgan** Owner SuperUser 5:05 AM
> Good morning Team 😊
>
> **Reminder:** Your time starts when you log into avaya; not when you clock into ADP. That means you should already be autoed into Avaya at the start of your shift, not still getting things loaded. If your start time is 11:00 am then at 11:00 am you should be autoed in to avaya waiting for calls. This will reduce the acquired attendance points from accumulating. You make clock into ADP no more than 5 minutes early. You can load citrix at least a half hour early to make sure you have all your system up and ready to begin your shift.

5

21. Qualfon disciplines CSRs if they are not fully booted-up, on the phone, and ready to take calls at the start of their shifts.

22. Therefore, the only way for Plaintiff and the Putative Class Members to be ready on time, and to avoid discipline, is to prepare the computer "off-the-clock" and without pay.

## UNPAID WORK DURING MEAL BREAKS

23. Qualfon provides Plaintiff and the Putative Class Members with one unpaid 30-minute meal break each day.

24. Qualfon requires Plaintiff and the Putative Class Members to perform "off-the-clock" work during their unpaid meal break.

25. Qualfon requires Plaintiff and the Putative Class to stay on the clock and on call until the minute their meal break begins. Then, they must clock out, log out of the phone system or otherwise go into an aux mode, and then log off of their computer prior to leaving their desk for their meal break.

26. The log off process used prior to taking a meal break can take anywhere from 1-3 minutes.

27. Qualfon requires Plaintiff and the Putative Class Members to log back into their computer, perform a restart process, log back into the phone system, then clock in, and be back on the phone before their meal break end.

28. The log in process used after returning from a meal break can take anywhere from 1-3 minutes, and sometimes 15 to 20 minutes when Plaintiff and the Putative Class Members had to fully reboot their computers when returning from their meal breaks.

29. This log off and log in procedure had to be performed during Plaintiff and the Putative Class Members' meal break per Qualfon's policy.

## UNPAID TECHNICAL DOWNTIME

30. Plaintiff and the Putative Class Members' computers crashed routinely, requiring them to reset the computer, frequently taking ten minutes or more.

31. Plaintiff and the Putative Class Members were required to contact the "supervisor line" to report that they were suffering technical issues when they occurred. When Plaintiff and the Putative Class Members reported their technical issues, their supervisors would adjust their time punches to take them off the clock for that time.

32. Qualfon required Plaintiff and the Putative Class Members to help troubleshoot their computers with Qualfon's IT staff while off-the-clock but does not pay them for that time.

33. On at least one occasion, Plaintiff Faucett's supervisor Angela Morgan called him on his day off and instructed him to log into Citrix, Qualfon's computer

network, to update his computer settings to try and eliminate technical difficulties. Qualfon did not pay Plaintiff Faucett for the time he spent performing this work.

### EXEMPLARY PAY-PERIOD TO ILLUSTRATE PRE-SHIFT, MEAL-PERIOD, AND POST-SHIFT COMPENSATION DEFICIENCIES

34. Plaintiff and the Putative Class Members typically worked forty "on-the-clock" hours answering phone calls, answering customer inquiries, and generally assisting customers.

35. There were instances where Plaintiff and Putative Class Members did not work forty "on-the-clock" hours in a work week.

36. As an example of a specific workweek where Qualfon failed to pay Plaintiff Faucett all straight time due, include the following:

### Pay Period of 12/19/22 to 01/01/23

- Qualfon paid Plaintiff Faucett at a rate of $15.00 per hour for the 11.36 hours it credited him for having worked. With unpaid pre-shift and meal-period time, in a range of twenty-five (25) to thirty-one (31) minutes per shift, at five shifts per week, Plaintiff should have been paid up to an additional one-hundred and twenty-four (124) minutes of straight time during this pay period.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37. The FLSA Collective is defined as:

*All hourly, non-exempt CSRs and other similar positions who were employed by Qualfon anywhere in the United States except for Pennsylvania,[1] at any time from 2/20/2021 through the date of final disposition of this matter ("**FLSA Collective**" or "**FLSA Collective Members**").*

38. At all times hereinafter mentioned, Qualfon has been an employer of Plaintiff and the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. At all times hereinafter mentioned, Qualfon has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40. At all times hereinafter mentioned, Qualfon has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof,

---

[1] Another FLSA Collective Action and Rule 23 Class Action lawsuit is pending against Qualfon in the Western District of Pennsylvania. *Tronka v. Qualfon Data Servs. Grp., LLC*, Case No. 2:23-cv-01317-RJC. The *Tronka* plaintiff asserts an FLSA collective of all Qualfon employees who work in Pennsylvania and a Rule 23 class under Pennsylvania law. ECF No. 13 (Amended Complaint).

9

and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

41. During Plaintiff and the FLSA Collective Members' employment with Qualfon, these individuals provided services for Qualfon involving interstate commerce for purposes of the FLSA.

42. In performing the operations described above, Plaintiff and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

43. Plaintiff and the FLSA Collective Members are individual employees who are or were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

44. Plaintiff and the FLSA Collective Members are non-exempt hourly employees of Qualfon who assisted its customers throughout the United States. 29 U.S.C. § 203(j).

45. Consistent with Qualfon's policies and practices, Plaintiff and the proposed FLSA Collective Members were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

46. Qualfon intentionally, willfully, and repeatedly engaged in a pattern,

practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a. Willfully failing to pay Plaintiff and the FLSA Collective Members, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

    b. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendants.

47. Qualfon knows that federal law requires it to pay Plaintiff and the proposed FLSA Collective Members wages for their pre-shift boot-up time. The U.S. Department of Labor published a fact sheet in 2008 informing call center employers that boot-up time is compensable. U.S. DEPT. OF LABOR, *Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)*, *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (Rev. July 2008) ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.").

48. Qualfon's unlawful conduct has been widespread, repeated, and consistent. Qualfon has been sued at least twice by its CSRs alleging violations of the FLSA based on, among other things, unpaid boot-up time, unpaid work during

meal breaks, and unpaid technical down time. *Tronka*, Case No. 2:23-cv-01317-RJC (E.D. Pa.); *Livingston v. Qualfon Data Servs. Grp., LLC*, Case No. 2:20-cv-12302-PDB-APP (E.D. MI).

49. Qualfon knows that it must pay Plaintiff and the FLSA Collective Members for the work they perform during their meal breaks or during technical downtime because it occurs during their workday after they have clocked in.

50. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

51. The employment relationship between Qualfon and every proposed FLSA Collective Member is the same and differs only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-, mid- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

52. Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of Members. The precise

number should be readily available from a review of Qualfon's personnel and payroll records.

53. All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 ALLEGATIONS

54. Plaintiff Faucett brings this action pursuant to Fed. R. Civ. P23(b)(3) on behalf of himself and on behalf of:

> *All current and former hourly, non-exempt CSRs and other similar positions who were employed by Qualfon anywhere in Louisiana at any time from 2/20/2021] through the date of final disposition of this matter ("**Louisiana Class Members**" or "**Louisiana Class**").*

55. The members of the Louisiana Class are so numerous that joinder of all Class Members would be impracticable. Plaintiff estimates that Qualfon employed approximately 100 hourly, non-exempt CSRs in Louisiana during the period of the claim.

56. There are common questions of law and fact applicable to the Louisiana Class, including but not limited to: (a) whether Qualfon agreed to pay its CSRs an hourly rate for all their hours worked; (b) whether Qualfon's agreement to pay its CSRs included all their pre-shift boot-up time, work during meal breaks, and technical downtime; (c) whether Qualfon was unjustly enriched by the unpaid work its CSRs performed each shift; and (d) whether Qualfon's CSRs were improverished

13

by Qualfon's decision not to pay them wages for all the off-the-clock work they performed.

57. Plaintiff's claims are typical of those of the Louisiana Class in that he and all other Louisiana Class Members suffered damages as a direct and proximate result of Qualfon's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Louisiana Class Members' claims and his legal theories are based on the same legal theories as all other Louisiana Class Members.

58. Plaintiff will fully and adequately protect the interests of the Louisiana Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Louisiana Class Members.

59. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Louisiana Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual.

60. This case will be manageable as a class action. Plaintiff and his counsel know of no unusual difficulties in this case and Qualfon has advanced networked computer and payroll systems that will allow the class, wages, and damages issues

to be resolved with relative ease.

**COUNT I**
**FLSA COLLECTIVE ACTION**

***VIOLATION OF THE FAIR LABOR STANDARDS ACT,***
**29 U.S.C. § 201,** *et seq.* **-- FAILURE TO PAY OVERTIME**

61. At all times relevant to this action, Qualfon required Plaintiff and all the proposed FLSA Collective Members to perform pre-, and mid-shift work off the clock, every shift, and Defendants failed to pay them overtime compensation for all work performed.

62. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) paid hours or more, the uncompensated off-the-clock work time should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

63. Qualfon's violation of the FLSA is knowing and willful. Qualfon knows how long it takes its CSRs to perform their off-the-clock work. Qualfon could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective Members for these work activities, but did not.

64. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 CLASS ACTION

**Violation of La. Rev. Stat. § 23:631 Failure to Pay Straight Time Wages**

65. At all times relevant to this action, Qualfon offered to pay Plaintiff and all other proposed Louisiana Class Members an hourly rate in consideration for all their hours worked. Plaintiff and all other Louisiana Class Members accepted Qualfon's offer and worked under their mutual arrangement.

66. However, Qualfon knew or should have known that it would breach the hourly employment agreement to compensate Plaintiff and all other Louisiana Class Members at an hourly rate for all hours worked when it required the Louisiana Class Members to be call-ready at the start of their scheduled shift when only permitting them to clock-in five minutes before the start of their shift.

67. Additionally, Qualfon knew or should have known that it would breach the hourly employment agreement to compensate Plaintiff and the Louisiana Class Members because it was not even possible to clock-in without performing part of the computer boot-up process off-the-clock.

68. Qualfon violated the employment agreement it struck with Plaintiff and all other proposed Louisiana Class Members by failing to pay

them for all of the straight time hours worked within fifteen days of the end of their employment. La. Rev. Stat. § 23:631.

69. Specifically, Qualfon failed to pay Plaintiff and all other proposed Louisiana Class Members for all the time they spent booting up their computers, all the time they spent performing work during their meal breaks, and all the time they spent working during technical downtime as described above.

70. Accordingly, Qualfon is liable to the Plaintiff and the Louisiana Class Members for unpaid straight time wages pursuant to La. Rev. Stat. § 23:631.

## COUNT III

### UNJUST ENRICHMENT/*QUANTUM MERUIT* AS TO PLAINTIFF AND THE PROPOSED RULE 23 CLASS MEMBERS[2]

71. At all times relevant to this action, Qualfon required Plaintiff and all proposed Louisiana Class Members to perform pre-shift and mid-shift work off-the-clock, every shift, but failed to pay these employees all the straight time wages they earned.

---

[2] Plaintiff alleges in Count II that Qualfon violated its employment agreement with Plaintiff and the Putative Class Members to pay for all hours worked. Plaintiff pleads a theory of unjust enrichment and quantum meruit in the alternative in the event the court concludes that the parties did not enter into an agreement to pay for the unpaid work alleged here. In Louisiana, Plaintiffs can plead unjust enrichment in the alternative when the existence of a contract is in dispute. *See U.S. ex rel. Sun Coast Contracting Servs., LLC v. DQSI, LLC*, 2014 WL 7246936, at *5 (M.D. La. Dec. 17, 2014) ("With the validity of Plaintiffs contract with Defendants still in question, and with no other potential remedies at law, the Court does not find a sufficient basis to dismiss Plaintiffs unjust enrichment claim at summary judgment based on the availability of other remedies at law."). *See also*, Fed. R. Civ. P. 8(d)(2)-(3).

72. Qualfon was enriched by the uncompensated work that Plaintiff and the proposed Louisiana Class Members performed "off-the-clock" booting up their computers, during their meal breaks, and during technical downtime.

73. Qualfon impoverished Plaintiff and the proposed Louisiana Class Members by retaining the wages it should have paid them for the work they performed "off-the-clock."

74. There is a connection between the "enrichment and the resulting impoverishment." Specifically, the enrichment and impoverishment are caused by the same conduct – Plaintiff and the proposed Louisiana Class Members' performance of uncompensated pre-shift and mid-shift work and Qualfon's failure to pay for all of that time.

75. There is no justification or cause to allow Qualfon to retain the benefit of Plaintiff and the Louisiana Class Member's unpaid labor as that time is compensable under both federal and state law.

76. Accordingly, Qualfon is liable to Plaintiff and the Louisiana Class Members for the value of the benefits (i.e., unpaid straight time wages) Plaintiff and the Louisiana Class Members conferred upon it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

18

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Louisiana Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's statutory wage claim (Count II);

c. An Order certifying this action as a class action (for the Louisiana Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment/quantum meruit claim (Count III);

d. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Louisiana Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e. An Order designating the Plaintiff as representative of the FLSA Collective and the Louisiana Class, and undersigned counsel as Class counsel for the same;

f. An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendants' violations of the FLSA were willful;

h. An Order declaring Defendants breached their employment agreements with Plaintiff and the members of the Louisiana Class;

i. An Order declaring Defendants were unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Louisiana Class to perform;

j. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Louisiana Class the full amount of damages and liquidated damages available by law;

19

k.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.  An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 20, 2024          Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HAYBER, MCKENNA & DINSMORE, LLC**
Richard E. Hayber (ct11629) (Admission pending)
Thomas Durken (ct 30371) (Admission pending)
750 Main Street, Suite 904
Hartford, Connecticut 06103
Telephone: (860) 522-8888
Facsimile: (860 218-9555
Email: rhayber@hayberlawfirm.com